IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| IN THE MATTER OF | ) | CIVIL NO. 11-00753 SOM |
| | ) | |
| EARLE A. PARTINGTON | ) | **ORDER OF SUSPENSION** |
| | ) | |
| _____ | ) | |

**ORDER OF SUSPENSION**

I.      **INTRODUCTION.**

        This case concerns the membership of Earle Partington
in this court's bar.  On November 18, 2011, the court was
advised that an Order of Suspension had been filed in the
Supreme Court of the State of Hawaii on November 9, 2011,
suspending Partington from the practice of law in Hawaii's state
courts for thirty days, effective thirty days from the date of
the order.  ECF Nos. 1 & 2.  This court, on November 21, 2011,
then issued an Order to Show Cause why Partington should not
also face a reciprocal suspension in this court in accordance
with Local Rule 83.4(d).  ECF No. 3.

        This case then was stayed for years as Partington
engaged in disciplinary proceedings in other jurisdictions in
which he was licensed.  Those other proceedings arose from the
same facts as the present case, which appears to be the last or
at least one of the last proceedings remaining.

        This court suspends Partington from the practice of
law before this court for thirty days under Local Rule 83.4(d).

Given the years that have passed during the pendency of this action and Partington's absence as counsel of record from cases in this court during those years, the term of his suspension shall be deemed to have run while the merits of the Order to Show Cause were being litigated. Partington may apply for reinstatement to practice law before this court.

## II.     BACKGROUND.

### A.     Military Proceedings.

Partington's suspension from the practice of law stems from his representation of AM1 Stewart Toles II U.S.N., during a court-martial proceeding at Pearl Harbor, Hawaii. *See* Request to End Stay, Exhibit M, ECF No. 26-7 at 64.[1] Toles's charges included various specifications under 18 U.S.C. § 1801 (video voyeurism), as well as allegations of disorderly conduct, sexual harassment, possession of child pornography, and the manufacturing of child pornography. *See id.; see also id.* at 727-30. In July 2006, Toles pled guilty to various charges and specifications pursuant to a pretrial agreement negotiated by Partington. *See id.* During the plea colloquy, the military judge initially accepted Toles's guilty pleas. *See id.* at 956-

---

[1]     Exhibit M is a disk that was submitted as part of ECF No. 26. The disk includes excerpts of the administrative record from the underlying suspension proceedings before the Office of the Judge Advocate General of the Navy. The page number citations in this order for Exhibit M refer to numbered Bates stamps in the bottom right corner of the documents on the disk.

71. Following the acceptance of the guilty pleas, the Government indicated that it would withdraw the charges to which Toles had not pled guilty. *See id.* at 971.

In an unusual move, Partington then moved to dismiss the specifications under 18 U.S.C. § 1801 for failure to allege offenses. He claimed there was a jurisdictional defect in the charging document in that it did not allege that the offenses had occurred within the Special Maritime and Territorial Jurisdiction of the United States. *See id.* at 971, 978. The military judge understandably questioned the timing of Partington's motion to dismiss, particularly because, before Toles had pled guilty, the judge had confirmed that there were no motions. *Id.* at 971-73.

Partington clarified that his client was still maintaining his guilty pleas to the offenses under 18 U.S.C. § 1801, while at the same time arguing that the offenses should be dismissed based on a denial of due process. *Id.* at 976-78. The military judge expressed concern about the ethics of the motion to dismiss. *Id.*

Without expressly granting or denying the motion to dismiss, *see id.* at 999-1000, the military judge focused on whether Toles's pleas were "provident." Determining that he could not accept the guilty pleas to the offenses under 18 U.S.C. § 1801, he set those pleas aside. *See id.* at 1000-02.

The military judge told the parties that he had "entered findings of not guilty" for the charges to which pleas had been set aside. *Id.* at 1001.

As Partington explained to this court during a hearing on May 15, 2017, the military judge had an off-the-record discussion in the course of the hearing. Partington told this court that the military judge ruled off-the-record that Toles was not guilty.

In on-the-record proceedings before the military judge, the Government took the position that Toles could plead guilty to the lesser-included offense of disorderly conduct under clauses 1 and 3 of Article 134 of the Uniform Code of Military Justice without nullifying the pretrial plea agreement. *Id.* at 1008. Partington agreed, stating, "We believe that the defendant--the accused has already been provident to that, to the lesser, and the Court can accept the pleas to the lesser based on what the accused has already stated in his providency." *Id.* at 1009. Partington also agreed that the pretrial agreement would be effective. *Id.* at 1010. The military judge ultimately accepted this revised agreement, and Toles pled guilty to instances of the lesser-included offense of disorderly conduct. *Id.* at 1009-15. Toles was later sentenced for these instances of disorderly conduct.

Partington represented Toles in an automatic appeal. *See id.* at 507. The United States Navy-Marine Corps Court of Criminal Appeals affirmed on October 30, 2007, expressing concern about Partington's "unsavory tactics" and stating that Partington's appellate brief had contained "disingenuous" arguments, "misrepresentations of the record," and "wholly unsupported allegations of error." *See id.* at 510.

Specifically, in his appellate brief, Partington had asserted that the military judge had "dismissed" the video voyeurism charges and "acquitted" Toles, using quotations marks around the words "dismissed" and "acquitted." *See* Exhibit I, ECF No. 26-3, PageID # 1611. In the "Statement of the Case," Partington wrote, "As to the video voyeurism specifications of charge IV to which Toles pled guilty, the military judge only accepted Toles' guilty pleas to the included offenses of disorderly conduct under UCMJ Art. 134, 'acquitting' him of the charged offenses of video voyeurism." *Id.* In the "Statement of the Facts," Partington stated, "The military judge then 'acquitted' Toles of these specifications because they did not allege the charged offenses of video voyeurism (Record at 278)." *Id.*, PageID # 1613. In the "Summary of the Argument," Partington contended that "the military judge dismissed specifications 2-7, 9-21, and 23 of charge IV and was never requested to reconsider these dismissals nor did he state that

he was going to reconsider these dismissals." *Id.*,
PageID #s 1615-16. In the "Argument" portion, Partington again repeated that the military judge had "acquitted" Toles and noted that "Toles had moved for neither an acquittal nor a dismissal of these specifications." *Id.*, PageID # 1617. He further explained that "the military judge's 'acquittal' was not an acquittal for double jeopardy purposes"; instead, "the military judge dismissed those specifications for failure to allege an offense, a legal issue." *Id.*

The heart of Partington's appellate argument relating to the video voyeurism issue stated:

> At no time did the government request reconsideration of the dismissals of the video voyeurism specifications nor did the military judge give notice to any party that he was reconsidering his dismissals. Therefore, there were no specifications pending to which the military judge could accept pleas to included offenses. The acceptance of Toles' pleas to disorderly conduct under dismissed specifications was a nullity. If the military judge intended to accept Toles' pleas to disorderly conduct under these specifications, he should not have dismissed them. He should have just accepted the pleas for disorderly conduct. Further, the court should have objected to the dismissals if it wanted to proceed on included offenses, but it did not. The findings as to these specifications must be set aside and the government's failure to object to the dismissals was a waiver of any right to proceed further on them.

*Id.*, PageID # 1618; *see also id.*, PageID #s 1625-26.

The Court of Appeals observed that, after Toles had moved to dismiss the offenses under 18 U.S.C. § 1801, the

6

"military judge did not dismiss the 18 U.S.C. § 1801 offenses,
did not acquit the appellant as to those offenses prior to the
findings, and did not rule that they failed to state an
offense." *See* ECF No. 26-7 at 510. The court said the record
showed that the military judge initially set aside the guilty
pleas to the 18 U.S.C. § 1801 offenses "but then, upon the
recommendation of the parties with the agreement of [Toles] that
he could plead to -- and be found guilty of -- the lesser
included offense, allowed [Toles] to enter guilty pleas to those
lesser included offenses." *Id.* The court further concluded
that the judge had not abused his discretion in finding Toles
not guilty of the offenses under § 1801 but guilty of the
lesser-included offense of disorderly conduct. *Id.* at 510-11.

In a footnote, the Court of Appeals instructed the
Clerk of Court to forward the opinion to the Assistant Judge
Advocate General of the Navy for review under JAG Instruction
5803.1C, *Professional Conduct of Attorneys Practicing Under the
Cognizance and Supervision of the Judge Advocate General* (32
C.F.R. § 776). *See id.* at 510.

On October 10, 2008, the Office of the Judge Advocate
General of the Navy (Navy JAG) sent Partington a letter noting
that the appellate judge who had authored the 2007 unpublished
opinion in the Toles case had lodged a "complaint" against
Partington that alleged potential professional responsibility

violations. *Id.* at 365. The letter informed Partington that
the JAG Rules Counsel was "conducting an inquiry to determine
whether there is probable cause to believe you have violated any
rules of professional responsibility, in particular, Rules 3.1
through 3.3" of the Navy Judge Advocate General Rules of
Professional Conduct. *Id.* Enclosed with the letter was a copy
of the 2007 unpublished opinion. *Id.* The letter set forth the
procedures that the Rules Counsel would follow, including
allowing Partington to "provide written comment on the issues
raised in the enclosure . . . within 10 working days of receipt
of this letter." *Id.*

On October 26, 2008, Partington wrote to the Navy JAG
to acknowledge receipt of the letter informing him of the
professional responsibility complaint. Partington noted that
the letter did not set forth any specific allegations, apart
from the text and footnote five in the 2007 unpublished opinion.
*Id.* at 368. He argued that the appellate opinion's assertions
were "false on [their] face." Partington claimed that "every
factual and legal assertion [in his appellate brief] is
supported by the record references or case citations and is
quite meritorious." *Id.* at 367. He also argued that he had
defended Toles ethically and competently and had had no duty to
inform opposing counsel or the military judge about defects in
the charges before Toles pled guilty. *Id.* at 369-70.

In early June 2009, Captain William Sprance determined that there was probable cause to believe that Partington had made misleading and inaccurate statements in his appellate brief. *Id.* at 69. Thereafter, Captain Morin of the Rules Counsel appointed Captain Robert Porzeinski to conduct a preliminary inquiry into the allegations against Partington. *Id.* at 308.

On June 29, 2009, Captain Porzeinski mailed a letter to Partington, informing him that his investigation was "substantially complete" but that he wanted to afford Partington an opportunity, as required, to review all the evidence he had considered in his inquiry and to submit a written statement or other written material. *Id.* at 310. Captain Porzeinski asked Partington to submit his written materials no later than July 10, 2009. *Id.* He also asked Partington to let him know if he did not intend to submit any material by the same deadline. *Id.*

On July 1, 2009, Partington sent a letter to Captain Porzeinski, stating that he had trouble responding because no one had specifically told him how he had allegedly violated Rule 3.3. *Id.* at 201. He asked for a "charge sheet." *Id.*

On July 30, 2009, Captain Porzeinski explained that, as he was conducting a preliminary inquiry, no "charge sheet" existed yet. *Id.* at 202. He directed Partington to review the unpublished appellate opinion, specifically page four and

footnote five relating to the court's discussion of Partington's use of the terms "dismissal" and "acquittal" in quotation marks. *Id.* Captain Porzeinski asked Partington to submit any written material no later than August 14, 2009. *Id.*

On August 10, 2009, Partington sent another letter to Captain Porzeinski. *Id.* at 282-83. He wrote, "I made all of the statements in my brief that I am accused of making and *all of them* are either correct statements of law or, as facts, *are true*!" *Id.* at 283. Addressing the use of the word "acquittal," Partington explained, "A finding of not guilty is an acquittal! Acquitted is in quotation marks because, as noted below, the military judge could not, as a matter of law, [have] acquitted Toles." *Id.* He acknowledged that "the military judge had dismissed the specifications rather than acquitted Toles of those specifications." *Id.* Partington further stated that his statements were true based on the record, that he had not lacked candor before the court, and that he had not made any misrepresentation. *Id.* at 284. At the end of his letter, he said, "The Court of Criminal Appeals owes me an apology, an apology I will never get." *Id.*

As of August 22, 2009, Partington had neither submitted any other written material nor raised any other matters for Captain Porzeinski's consideration. *Id.* at 69; *see id.* at 199. Captain Porzeinski concluded, by a preponderance of

the evidence, that Partington had violated Rule 3.1 and Rule
3.3. *Id.* at 305. He also concluded that "corrective action
greater than counseling may be warranted," *id.*, and recommended
an ethics investigation. *Id.* at 307.

On October 6, 2009, Captain Morin sent Partington a
letter informing him that an ethics investigation would be
conducted into the allegations against him. *Id.* at 111. The
letter informed Partington of his procedural rights, including
requesting a hearing, inspecting all evidence, presenting
written or oral statements or materials, calling witnesses,
being assisted by counsel, challenging the investigating officer
for cause, and affirmatively waiving any of these rights. *Id.*
at 111-12. Enclosed with this letter were Captain Porzeinski's
preliminary inquiry report, a list of alleged professional
conduct violations, and a letter noting the appointment of
Captain Blazewick as the investigating officer. *Id.* at 113-200.

On October 22, 2009, Captain Blazewick sent a letter
to Partington informing him that he was the investigating
officer and that he was extending the deadline for Partington to
request a hearing. *Id.* at 212-13. Captain Blazewick also set
forth the procedures he would follow if Partington were to elect
a hearing. *Id.*

On October 29, 2009, Partington sent a letter to
Captain Morin, informing him that he was not on Oahu and that

his secretary had requested a hearing without his consent. *Id.*
at 239. He requested additional time to respond to whether he
would elect a hearing. *Id.* Partington also requested notice of
the charges against him and Captain Blazewick's curriculum
vitae, questioned the Navy JAG's jurisdiction over the
proceedings, and said that he could not defend himself without a
waiver by Toles of the attorney-client privilege. *Id.* at 239-
40. He raised concerns about whether he would be afforded due
process in the proceedings and observed that "[t]his matter is
beginning to cross the line between legitimate investigation and
harassment of criminal defense counsel." *Id.* at 240.

On October 30, 2009, Captain Blazewick responded to
Partington's October 29 letter to Captain Morin, again extending
the deadline for Partington to request a hearing and addressing
his concerns about the Navy JAG's authority to regulate
professional conduct and to conduct the investigation. *Id.* at
216. Captain Blazewick reiterated that, regardless of whether
Partington elected a hearing, Captain Blazewick would forward
all materials to be considered in drafting his report and
provide Partington with a reasonable time to respond. *Id.*
Captain Blazewick attached the allegations of professional
conduct violations and his curriculum vitae. *See id.* at 216-20.

On November 2, 2009, Partington wrote to Captain
Blazewick, pointing out that there appeared to be "a major

12

deficiency in the allegations" against him insofar as they failed to specify the "falsity contained in each false statement allegation." *Id.* at 241. He raised several questions as to who was representing the Navy, who had the burden of proof, who had the initial burden of persuasion, and what presumptions would arise. *Id.* He again raised the issue that Toles would need to waive his attorney-client privilege. *Id.* at 242.

On November 9, 2009, Partington sent another letter to Captain Blazewick, noting that Captain Blazewick had not yet responded to his November 2 letter. *Id.* at 243. Partington stated that he was "entitled to know, in regard to the false statement allegations, what the truth is alleged to be as to each allegation" and reiterated that he needed a written waiver of the attorney-client privilege from Toles. *Id.* He also explained why he used the term "acquitted" in quotation marks and the difference between "acquitted" and "guilty," as used by the military judge. *Id.* at 243-44.

On November 16, 2009, Captain Blazewick responded to Partington's letters from November 2 and November 9, 2016, apologizing for the delay because he had been traveling for business. *Id.* at 225. He noted that Partington had not yet "made an affirmative election or waiver" of his right to a hearing. *Id.* Captain Blazewick "presumed" that Partington would elect to have a hearing "based on the tone and timing" of

his letters. *Id.* Captain Blazewick requested that Partington contact him to schedule a specific hearing date and repeated how the investigation would proceed. *Id.* He said he did not intend to call any witnesses at the hearing. *Id.* He also attached "a complete copy of all the evidence" he intended to consider in producing his report, including a summary of that evidence, and reiterated that Partington could present evidence, call and question witnesses, and be assisted by counsel. *Id.* at 226.

> Captain Blazewick specifically told Partington:
>
> You are accused of violating the Rules of Professional Conduct by misrepresenting the record of trial to the NMCCA in your appellate brief. This is a question of the candor and merit of your brief and does not involve any tactical trial decisions.

*Id.* He also said that he did not believe the accusations against Partington appeared to involve any privileged communications between Partington and Toles. *Id.* He explained the procedures Partington could follow if Partington still believed his client's right to confidentiality would be an issue. *Id.*

On November 18, 2009, Partington sent Captain Blazewick a letter, stating, "I gather from what you are telling me that there is no prescribed procedure for this hearing and that you are free to make it up as you go or after you go." *Id.* at 245. He raised concerns as to his due process rights and a

waiver of his client's attorney-client privilege. *Id.* He also reiterated that he needed to know what the asserted truth was as to each false statement allegation against him. *Id.*

On November 25, 2009, Captain Blazewick sent Partington a letter giving Partington an additional week to submit any matters for consideration. *Id.* at 229. He told Partington what evidence he was relying on. *Id.* He also noted that Partington's failure to respond to multiple requests to elect and schedule a hearing was a waiver of the right to a hearing. *Id.* Captain Blazewick observed that it had been forty-four days since Partington had been notified of his right to elect a hearing. *Id.*

On December 3, 2009, Partington wrote to Captain Blazewick, noting that Captain Blazewick had not responded to his "previous letters concerning the alleged truth as to the 'specifications' alleging false statements, as well as [his] procedural questions." *Id.* at 246. He informed Captain Blazewick that Toles would not waive his attorney-client privilege and again stated that the Navy did not have jurisdiction over him for these proceedings. *Id.* After reiterating his concern about the procedures and charges against him, Partington wrote, "I have no more interest in your proceeding and could care less what the outcome is." *Id.* at 247. He further stated, "Sadly, what happened in the Toles case

is that the government blundered badly and I did my ethical duty thereby gaining a substantial benefit for my client.  As a result, the Navy was badly embarrassed." *Id.*

On December 8, 2009, Captain Morin responded to Partington's December 3 letter. *Id.* at 231.  He notified Partington that an ethics investigation hearing was scheduled for December 21, 2009, and that, absent a showing of good cause, the hearing would not be rescheduled to a later date. *Id.* Captain Morin restated the procedures that would be followed at the hearing and enclosed the list of professional conduct allegations against Partington, which had been previously sent to Partington and had remained unchanged. *Id.*

On December 9, 2009, Partington sent a letter to Captain Morin, stating that he did not "see any purpose in participating in the hearing" if the Navy did not intend to afford him "basic due process." *Id.* at 248.  He repeated issues he had previously raised in other letters and noted that he would not be available for the December 21 hearing date. *Id.* He reiterated his belief that the prosecuting trial counsel in the Toles case had been incompetent, that the Navy JAG did not have jurisdiction over him, and that the Navy was trying to blame him, which he said was "not going to work." *Id.*

On December 22, 2009, Captain Blazewick responded to Partington's December 9 letter to Captain Morin and notified

Partington that his hearing was rescheduled for January 19, 2010. *Id.* at 233.

On January 6, 2010, Partington sent a letter to Captain Blazewick expressing his intent not to participate in the ethics investigation hearing. *Id.* at 250. He repeated his concerns about the lack of due process and asserted that the "sole purpose of this proceeding is to intimidate naval service defense counsel from aggressively and ethically representing their client in naval service courts-martial." *Id.*

On January 11, 2010, Captain Blazewick responded to Partington's January 6 letter and confirmed that, even though Partington had indicated he would not participate, the ethics investigation hearing would proceed and take place on January 19, 2010. *Id.* at 237.

On January 20, 2010, Captain Blazewick prepared a memorandum stating that, although he had been prepared to hold an ethics investigation hearing, Partington had not shown up and had not contacted him since January 6. *Id.* at 271. According to Captain Blazewick, Partington had not responded to his telephone calls or emails and had not submitted anything further for consideration, even after being expressly invited to do so. *Id.* at 103.

Captain Blazewick subsequently sent his report to Partington. *See id.* at 80. The report concluded that

Partington had violated Rules 3.1 and 3.3 of the Rules of
Professional conduct. *Id.* at 105-09.

On March 31, 2010, Partington acknowledged receipt of
the ethics investigation report, which he characterized as
"laughable if it were not potentially so serious." *Id.* at 74.
Partington said, "The Navy's refusal to tell me what the alleged
truth was as to these specifications made it impossible for me
to offer a defense." *Id.* He characterized the ethics
investigation as an "unconstitutional proceeding" violating his
due process rights and right to counsel. *Id.* He noted that he
might sue the Navy in United States District Court, writing,
"Let me assure you that if this matter goes to federal court, it
will be the Navy and not I that comes away with a black eye."
*Id.*

On April 5, 2010, Captain Michael Quinn, the acting
Assistant Judge Advocate General for Civil Law, recommended that
Partington be indefinitely suspend from practicing law in
proceedings under the Navy JAG. *Id.* at 68; *see also id.* at 110.
Captain Quinn noted that no mitigating circumstances had been
presented and that "Mr. Partington's continued dissemblance
regarding his appellate brief, his intemperate statements
regarding NMCCA, and his multiple assertions that the Navy Judge
Advocate General lack jurisdiction in this matter are
aggravating factors." *Id.* at 72. Captain Quinn further

recommended that notice of Partington's suspension be provided to other naval tribunals and to the State Bar licensing authorities of Hawaii, Oregon, California, and the District of Columbia. *Id.* at 73.

On May 10, 2010, the Navy JAG, Vice Admiral James Houck, indefinitely suspended Partington from the practice of law in Navy courts. *See id.* at 64. Based on this suspension, the United States Court of Appeals for the Armed Forces issued an order to show cause, *see id.* at 42-43, and ultimately imposed reciprocal discipline for a period of one year. *See id.* at 13-14.

Notice of Partington's suspension was forwarded to the disciplinary boards of the District of Columbia, California, Hawaii, Oregon, and the Commonwealth of the Northern Mariana Islands. *See id.* at 45-54.

## B. Civilian Court Proceedings.

On November 9, 2011, the Hawaii Supreme Court issued its Order of Suspension (the "November 9, 2011 Order"), suspending Partington for thirty days. *Office of Disciplinary Counsel v. Partington*, No. SCAD-11-0000162, 2011 WL 5517313, at *2 (Haw. Nov. 9, 2011) (as corrected Dec. 8, 2011) (unpublished opinion). The Hawaii Supreme Court held that Partington's actions in the court-martial appeal violated Rules 3.3(a)(1) and 8.4(a) of the Hawaii Rules of Professional Conduct. *Id.*

The Hawaii Supreme Court noted that Partington had apparently "omitted material facts necessary to accurately portray the court-martial proceedings that were the subject of the appeal" and "continues to refuse to acknowledge the wrongful nature of his conduct." *Id.* The majority observed "in mitigation" that the court-martial record "was unclear in some respects" and that "Partington had some basis on which to argue that his client could not plead guilty to a lesser included offense under the circumstances as they existed." *Id.* Ultimately, the majority said that it was "not convinced that Partington's omissions of material facts were done deliberately with the intent to mislead or deceive the court," and, therefore, declined to impose reciprocal discipline of a one-year suspension. *Id.* The Hawaii Supreme Court suspended Partington for only thirty days, effective thirty days from the date of its Order. *Id.* Partington was reinstated on February 29, 2012. *Office of Disciplinary Counsel v. Partington*, No. SCAD-11-0000162, 2012 WL 681227, at *1 (Haw. Feb. 29, 2012) (unpublished opinion). Two of the five justices dissented, arguing that a longer suspension was warranted.

On November 21, 2012, this court issued an Order to Show Cause as to why Partington should not be suspended from

practicing in this court in accordance with Local Rule 83.4(d). ECF No. 3.[2]

While the proceedings in Hawaii were pending, Partington filed a civil action in the United States District Court of the District of Columbia alleging various claims against Navy JAG officials stemming from his discipline. *See Partington v. Houck*, 840 F. Supp. 2d 236 (D.C. 2012); *see also* ECF No. 10; ECF No. 10-2, PageID #s 1346-59. Partington asserted, among other things, that because he was a civilian attorney, the Navy JAG lacked statutory authority to discipline him. *Partington*, 840 F. Supp. 2d at 238. On January 10, 2012, the district court dismissed all of Partington's claims. *See id.* at 245. Partington appealed.

With Partington's appeal in the District of Columbia pending, this court held a hearing on February 27, 2012. Partington expressly waived confidentiality and asked that the hearing be open to the public. *See* ECF No. 11. The court then ordered the hearing and the case file unsealed. *See id.* This court asked Partington to provide it with a copy of his appellate brief in the District of Columbia appeal. *See id.* This court subsequently deferred its proceeding pending

---

[2]    That order was vacated on March 6, 2012, pending completion of related proceedings in the District of Columbia, but was thereafter reinstated. *See* ECF No. 43.

completion of Partington's appeal in *Partington v. Houck*, Civ.
No. 12-5038 (D.C. Cir.).  ECF No. 12, PageID # 1364.

While Partington's appeal was pending before the D.C.
Circuit, the District of Columbia Court of Appeals imposed
reciprocal discipline based on the Hawaii Supreme Court's Order
and suspended Partington for thirty days.  *In re Partington*, 45
A.3d 161, 162 (D.C. Cir. 2012).  Then, on July 23, 2013, the
D.C. Circuit affirmed the federal district court's dismissal of
Partington's claims, concluding that the Navy JAG had had
authority to suspend Partington from practice before Navy courts
and had provided ample due process before indefinitely
suspending him.  *See Partington v. Houck*, 723 F.3d 280, 282-89
(D.C. Cir. 2013).

On October 17, 2013, the Supreme Court of Oregon
issued a reciprocal discipline order based on the Hawaii Supreme
Court's discipline and suspended Partington for sixty days.  *See*
ECF No. 32.

In the ensuing period, disciplinary proceedings were
ongoing in the State of California.  This court stayed the
present case in the meantime.

On April 28, 2017, Partington notified the court that
the California proceedings had concluded.  ECF No. 29.
Following a hearing and review, the California State Bar Court
imposed reciprocal discipline and suspended Partington for

thirty days. *See In re Partington*, Case No. 12-J-10617, 2016 WL
8737404, at *1 (Cal. Bar Ct. Dec. 7, 2016). The California
State Bar Court found that Partington had failed to establish
that the Navy JAG proceedings violated his due process rights.
*Id.* That court also found that "the mitigation for Partington's
lengthy period of discipline-free practice warrants less weight
because of the significant aggravation of his lack of insight."
*Id.*

This court asked Partington to file "any other orders
from outside this district relating to the same conduct" in this
case. ECF No. 31, PageID # 1694. Partington filed a
declaration, noting a stayed proceeding in the Commonwealth of
the Northern Mariana Islands. ECF No. 32, PageID # 1696.

This court held a hearing on May 15, 2017, during
which Partington referred to the off-the-record conference with
the military judge in the Toles court-martial proceedings and to
testimony before the California State Bar Court relating to the
content of that conference. *See* ECF No. 33. This court invited
Partington to file any excerpts of record relating to the in-
chambers conference, as well as to file any other material he
wanted this court to consider. *See* ECF No. 33.

Partington submitted several supplemental filings. In
one of those filings, Partington maintains that Captain
Blazewick had refused to respond to five letters in which he had

asked about the specific charges against him. *See* ECF No. 38, PageID # 1707. He also says that he had no obligation to offer evidence in his own defense. *See id.* He says that he "had every right to rely on a complete failure of proof which in fact happened." *Id.*, PageID # 1708.

Partington also gave this court Declarations of Anita Scott and Karl Mueller, who were his military co-counsel in the Toles case. According to Partington, he had discussed the motion to dismiss based on a jurisdictional defect with Mueller and Scott before Toles pled guilty. *See* Response to Order to Show Cause, ECF No. 5, PageID #s 31-32. In their declarations, Mueller and Scott corroborate Partington's recollection of discussions about how to handle the jurisdictional issue. *See* ECF No. 41, PageID # 1766; Declaration of Anita Scott, ECF No. 38-2, PageID #s 1713-14. They say that they had concluded that they were "legally, professionally, and ethically obligated" to raise the jurisdictional defect only after Toles pled guilty. *See* ECF No. 5, PageID # 32; *see also* ECF No. 38-2, PageID #s 1713-14; ECF No. 41, PageID #s 1766-67. According to Mueller, "The defense team was somewhat surprised when the military judge 'entered findings of not guilty' as to the video voyeurism specifications (Petty Officer Toles Transcript at page 278) but did not believe the Military Judge was misspeaking." ECF No. 41, PageID # 1767.

Both Scott and Mueller recalled that, in the off-the-record conference, the military judge had explained that he had entered findings of not guilty as to the video voyeurism specifications because trial counsel had failed to properly allege those offenses. *See* ECF No. 38-2, PageID # 1714; ECF No. 41, PageID # 1767. Both co-counsel also remembered the military judge telling the prosecutor that he had been "out sharked" by the defense. *See* ECF No. 38-2, PageID # 1714; ECF No. 41, PageID #s 1767-68. Scott and Mueller said that Partington had sent both of them drafts of his appellate brief, which they had reviewed. *See* ECF No. 38-2, PageID # 1715; ECF No. 41, PageID # 1768. According to Scott, she had not seen any misstatement of fact, factual error, or unmeritorious legal argument. *See* ECF No. 38-2, PageID #s 1715-16. Mueller also found no mistake in his review. ECF No. 41, PageID # 1769. However, in rereading the brief, he noted that on page 8 there was a statement that "Toles had moved for neither an acquittal nor a dismissal of *these* specifications." *Id*. He reasoned, "While perhaps not obvious to a third party without the benefit of the defense theory during discussions amongst counsel, I believe 'these specifications' reasonably refers to the disorderly conduct offenses and not the video voyeurism offense." *Id.* Both Scott and Mueller conceded that the record might be confusing, but they agreed that Partington's "relevant

statements and accompanying arguments were sound and appear to have been wholly misunderstood." ECF No. 38-2, PageID # 1716; ECF No. 41, PageID # 1769.

**III.       STANDARD OF REVIEW.**

### A.   Legal Standard.

Local Rule 83.4(d) provides:

> Whenever it comes to the attention of the court that any member of the bar of this court has been disbarred or suspended from practice by any court . . . a notice shall be mailed to such member at the member's last known residence and office addresses, requiring the member to show cause within fourteen (14) days after the mailing of such notice why the member should not be disbarred or suspended from practice before this court. Upon the member's failure to respond or upon a response to said notice, the court may, as in the opinion of the court the circumstances warrant, disbar or suspend the member from practice before this court.

The Ninth Circuit, in *In re Kramer*, 282 F.3d 721, 724 (9th Cir. 2002), stated that "a federal court's imposition of reciprocal discipline on a member of its bar based on a state's disciplinary adjudication is proper unless an independent review of the record reveals: (1) a deprivation of due process; (2) insufficient proof of misconduct; or (3) grave injustice which would result from imposition of such discipline." The disciplined attorney has the burden of demonstrating one of the three deficiencies by clear and convincing evidence. *Id.* This court presumes the correctness of a state bar court's factual

findings.  *See Gadda v. Ashcroft*, 377 F.3d 934, 943 (9th Cir.
2004).  Notwithstanding that presumption, this court has
conducted an independent review of the record, as evidenced in
the preceding pages.

### B.    Local Procedure.

This court appointed a three-judge panel to address
Partington's opposition to its OSC.  Contested disciplinary
proceedings are relatively infrequent, and this court
consequently has no standing committee of lawyers to reply to a
subject attorney's contentions.  Although this court may
occasionally request assistance in that regard from the United
States Attorney's Office, it typically considers the subject
attorney's written and oral presentations without receiving
submissions from an opposing source.  In the present case,
Partington faced no opposition and this court looked only to
whether he himself had met his burden of showing a defect in the
underlying discipline by clear and convincing evidence.

## IV.    DISCUSSION.

Partington's legal arguments before this court are as
confusing as the factual record is.  In the end, none of those
arguments is persuasive.  Although this court considers the
proper focus of its analysis to be the constitutionality of the
Hawaii Supreme Court's Order, this court begins with an
examination of the military proceedings that are the

underpinning for that Order and that Partington has relentlessly
challenged in this and other courts.

### A. Partington Suffered No Deprivation of Due Process in the Underlying Military Proceedings.

#### 1. The Military Properly Exercised Jurisdiction Over Partington's Right to Practice in Military Court Proceedings.

This court begins with addressing Partington's
jurisdictional challenge to the military's disciplinary
proceedings, which culminated in his indefinite suspension from
the practice of law in Navy courts and a reciprocal one-year
suspension in the United States Court of Appeals for the Armed
Forces.  His argument in that regard is that the Navy JAG had no
authority to challenge a civilian attorney's ability to
represent a client in Navy courts.  ECF No. 5, PageID #s 46-51.

Notably, this was not an argument that Partington
fully fleshed out in the original military disciplinary
investigation.  In fact, despite mentioning this issue in
letters, he opted not to submit a brief on the matter or to even
ask for a hearing in that context.  This delay is reminiscent of
his decision to raise a jurisdictional challenge to the charges
against Toles only after Toles had pled guilty.

The issue of whether the military may discipline a
civilian attorney was thoroughly litigated in the civil case
Partington filed in the District of Columbia.  The district

court rejected Partington's argument, pointing to Article 36 of the Uniform Code of Military Justice, which authorizes the President to prescribe procedural rules for courts-martial proceedings. *Partington v. Houck*, 840 F. Supp. 2d 236, 240-41 (D.D.C. Jan. 10, 2012). The district court observed that the Manual for Courts-Martial includes rules authorizing the Navy to discipline "other lawyers," a term that the district court read as encompassing civilian defense counsel such as Partington. *Id.* The D.C. Circuit affirmed. *See Partington v. Houck*, 723 F.3d 280, 285-87 (D.C. Cir. 2013).

Partington appears to be asking this court to revisit this issue, but he provides no analysis as to why he escapes the effect of a ruling that he himself sought in the District of Columbia. Collateral estoppel principles preclude this court from proceeding as if the issue has not been decided. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012) ("Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.'" (citation omitted)); *United*

*States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1170

(9th Cir. 2010) (discussing when collateral estoppel attaches).

Even if this court were free to address the

jurisdictional question anew, Partington has not persuaded this

court that it should come to a conclusion different from that

reached in the District of Columbia.  This court views

Partington as having been subject to the military disciplinary

process.

### 2.    The Military Proceedings Were Conducted in Accordance With Due Process Requirements.

The Navy suspension of May 7, 2010, and the Hawaii

Supreme Court's Order of Suspension of November 9, 2011, both

relied on the same basic facts (of which Partington had notice)

in finding that Partington should be suspended.  *See* ECF No. 26-

7 at 13-14, 64-67.  Specifically, the military disposition

found, by clear and convincing evidence, that Partington had

violated Rule 3.1 (Meritorious Claims and Contentions) and Rule

3.3 (Candor and Obligation Toward the Tribunal) of the Rules of

Professional Conduct under JAGINST 5803.1C.

Rule 3.1 states,

A covered attorney shall not bring or defend a
proceeding, or assert or controvert an issue
therein, unless there is a basis for doing so
that is not frivolous, which includes a good
faith argument for an extension, modification, or
reversal of existing law.  A covered attorney
representing an accused in a criminal proceeding
or the respondent in an administrative proceeding

that could result in incarceration, discharge
from the naval service, or other adverse
personnel action, may nevertheless defend the
client at the proceeding as to require that every
element of the case is established.

ECF No. 26-7 at 358. The comment to this rule provides, "The

covered attorney has a duty to use legal procedure for the

fullest benefit of the client's cause, but also has a duty not

to abuse legal procedure." *Id.* at 358-59.

Rule 3.3(a) states,

A covered attorney shall not knowingly:

(1) make a false statement of material fact or
law to a tribunal;

(2) fail to disclose a material fact to a
tribunal when disclosure is necessary to avoid
assisting a criminal or fraudulent act by the
client;

(3) fail to disclose to the tribunal legal
authority in the controlling jurisdiction known
to the covered attorney to be directly adverse to
the position of the client and not disclosed to
opposing counsel;

(4) offer evidence that the covered attorney
knows to be false. If a covered attorney has
offered material evidence and comes to know of
its falsity, the covered attorney shall take
reasonable remedial measures; or

(5) disobey an order imposed by a tribunal unless
done openly before the tribunal in a good faith
assertion that no valid order should exist.

*Id.* at 360. The comment to this rule provides that, while an

attorney should present a client's case "with persuasive force,"

the attorney's "[p]erformance of that duty while maintaining

confidences of the client is qualified by the covered attorney's duty of candor to the tribunal." *Id.* at 361.

The Navy JAG summarized Partington's professional misconduct as follows:

> I find that you took two misstatements by the military judge when he said he was entering a "finding of not guilty" with respect to certain specifications and, in turn, grossly exaggerated those misstatements in your appellate brief to the point that you intentionally misrepresented the posture of the case by claiming the military judge dismissed and/or acquitted your client of the offenses at issue. . . .
>
> I find that you filed an appellate brief with NMCCA that contained statements you knew to be both false and misleading, specifically: that the appellant had never moved for dismissal of specifications at the trial; that the military judge had dismissed the specifications at trial; that the military judge had acquitted the accused of the specifications at trial; and that the military judge had ruled that the specifications failed to allege an offense at trial.

*Id.* at 65-66. The Navy JAG concluded that Partington had deliberately and intentionally misled the court in the appellate brief. *See id.*

Partington argues that the Navy disciplinary proceedings deprived him of his due process rights. ECF No. 5, PageID #s 59-68. This court disagrees.

In attorney disciplinary proceedings, the Supreme Court has stated that "notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence." *In re Ruffalo*, 390 U.S. 544, 550 (1968) (quoting

*Randall v. Brigham*, 74 U.S. 523, 540 (1868)).  An attorney facing a punishment or penalty must have fair notice of the charge.  *Id.* at 550.  Because disciplinary proceedings are of a "quasi-criminal nature," the charge against an attorney "must be known before the proceedings commence."  *Id.* at 551.

This court turns to each of Partington's due process complaints as to the Navy disciplinary proceedings.

First, Partington questions whether the Navy disciplinary proceedings were properly initiated, asserting that the Naval Court of Appeals' opinion could not have served as a complaint.  ECF No. 5, PageID #s 59-60.  However, the Naval Court of Appeals expressly asked that the Navy conduct an investigation into Partington's actions and included specific references to Partington's alleged misconduct in a footnote to its opinion.  *See* ECF No. 26-7 at 510.  Staff followed up on behalf of the appellate panel in ensuring that the opinion was transmitted to the appropriate Navy ethics investigating authority.  *See id.* at 318.  A referral by a military appellate panel, rather than military co-counsel or a military trial judge, does not render the proceedings against Partington improper.  Partington cites no authority stating that concerns expressed in an appellate decision may not serve to initiate a military disciplinary investigation.

Second, Partington asserts that, even if the proceedings were properly commenced, the Navy failed to give him fair notice of the charges against him because the Navy never told him how the statements in issue were false. There is no dispute that the Navy provided him with a list of fourteen specifications detailing which of his statements were allegedly false. ECF No. 5, PageID # 62. Partington insists that many of the alleged false statements were in fact legal arguments that could not have been true or false, and that the burden was on the Navy to show what made any factual statement false. *Id.* In essence, Partington contends that there is insufficient proof of misconduct.

During the preliminary inquiry, Captain Porzeinski told Partington that there was not yet any "charge sheet." *See* ECF No. 26-7 at 202. Captain Blazewick and Captain Morin then sent Partington the list of fourteen specifications. *See, e.g.*, *id*. at 113-200, 231. Partington was given an opportunity to address the charges against him at an evidentiary hearing. *See id*. at 231, 233-34, 237.

Quite apart from the opportunities Partington had to respond to any allegation of falsity, there were multiple instances in which Partington's statements in his appellate brief were in fact on their face far from forthcoming. Although the declarations of Mueller and Scott assist this court in

better understanding what transpired before the military trial judge in the Toles case, the record is quite confusing and Partington's appellate brief was, at best, his interpretation of the record unaccompanied by any explanation that clarified the bases for his interpretation.

That his appellate brief, viewed charitably, required clarification is evident from Partington's most recent submissions to this court. For some reason, he has waited years to provide additional context and explanation for his allegedly false statements. He concedes that the statement set forth in Specification 1, stating that Toles had neither moved for a dismissal nor an acquittal, was inaccurate due to an "editing error" but was not a deliberate attempt to mislead the court. ECF No. 5, PageID #s 51-52. To the extent the alleged false statements in Specifications 2 through 13, all relating to the "acquittal" of the video voyeurism specifications, do not refer to statements of fact, Partington says that they are legal argument, which can neither be true nor false. *Id.*, PageID #s 52-58. To the extent those specifications allege that Partington knowingly made a false statement of fact, he contends that those facts are true. *See id.*

What has always been clear even without any of the recently supplied explanations or evidence is that Toles, having been advised by Partington, pled guilty to lesser-included

charges of disorderly conduct.  Following sentencing, Partington
filed Toles's appeal.  In his opening brief, Partington
contended that Toles had been "acquitted."  He repeatedly used
quotation marks around the word "acquittal," apparently
conscious that his word choice involved an interpretation of the
record rather than actual fact.  The brief that Partington filed
for Toles would have been more helpful to any tribunal had
Partington himself been more direct and avoided using code words
like "acquittal" without explaining them.  Partington would have
served Toles better had he acknowledged forthrightly that Toles
was only belatedly claiming that he could not have actually pled
guilty at all to anything given the jurisdictional flaw in the
original charges.  If Partington thought he was being clever by
using words in quotation marks, his tactic backfired for reasons
that were entirely avoidable by him.

　　　　The record reflects that the Navy had reason to
discipline Partington.  The Navy was not required to provide
anything more to Partington than it did, including the list of
fourteen specifications, an opportunity to be heard in person at
an evidentiary hearing, and all evidence that was eventually
considered in determining that Partington had misrepresented the
record.

　　　　Third, Partington grumbles that he was "unable to
fashion an adequate response, as he could not know what level of

response would be required to rebut the specifications" without knowing what presumptions would be applied and who bore the burden of proof and persuasion. ECF No. 5, PageID # 61. He claims that, even though he was offered a hearing, he had presumed that the hearing would suffer from "gross procedural defects." ECF No. 5, PageID # 61; *see also id.*, PageID # 67. He points to the alleged failure of the Navy to interview other military co-counsel and the military judge, to obtain sworn affidavits, and to gather statements from relevant material witnesses. *Id.*, PageID # 64.

Contrary to his assertions, Partington was informed several times about the applicable procedures. *See, e.g.*, ECF No. 26-7 at 111-12, 212-13, 225-26. Both Captain Porzeinski and Captain Blazewick informed Partington of the procedures, provided him with the evidence that they would consider, and gave him multiple opportunities to submit any written material rebutting the charges against him. *See id.* Additionally, Captain Blazewick told Partington that the evidentiary hearing would be "nonadversarial" and that he himself did not intend to call any witnesses, although Partington could call witnesses himself. *See id.* at 225. If Partington felt "disadvantaged," he could have expressed that more thoroughly at the evidentiary hearing or in writing. He also could have asked for more time to prepare a response rebutting the charges, as the record

37

reflects that the Navy officers gave him multiple time
extensions of the deadline for requesting a hearing.  Partington
chose to accuse without providing analysis and then not to show
up at the hearing or provide substantive written responses to
the allegations against him, even after multiple opportunities
to do so.  *See, e.g., id.* at 69, 103, 199, 310.

Fourth, Partington complains about the qualifications
and background of Captain Blazewick, asserting that he was not a
"neutral arbiter, but was, in fact, prosecutor and judge."
ECF No. 5, PageID # 61.  Partington claims that Captain
Blazewick suffered from "an actual or apparent conflict of
interest" because he was the Commanding Officer of the Navy
Trial Service, which was the office that had initially brought
the case against Toles.  *Id.*, PageID # 64.  He also says that
Captain Blazewick had a conflict of interest because no other of
his military defense co-counsel was investigated for the alleged
false statements in the Toles appellate brief, meaning that
Partington was singled out as civilian defense counsel.  *Id.*,
PageID # 62.

Partington did not raise his concerns about the
impartiality of Captain Blazewick during the military
investigation.  It appears that he waived his right to challenge
Captain Blazewick for cause, even though he had been informed
that he had a right to raise such a challenge.  *See* ECF No. 26-7

at 112-12, 212-13.  In fact, Partington had received Captain

Blazewick's curriculum vitae.  *See id.* at 216-20, 241.  It was

always clear that Captain Blazewick was the investigating

officer, that Captain Morin would review his report, that

Captain Quinn would review the recommendation of the Rules

Counsel, and that Vice Admiral Houck would review Captain

Quinn's recommendation and determine whether or not to

discipline Partington.  Contrary to Partington's contention,

Captain Blazewick acted only as the investigator, not as both

"prosecutor and judge."  Partington's complaints as to Captain

Blazewick are untimely, and Partington provides no reason for

his tardiness.

Finally, Partington characterizes the Navy's

disciplinary actions as "arbitrary and capricious."  *See* ECF No.

5, PageID # 63.  Collateral estoppel may apply to this issue,

which Partington chose to litigate in the civil action he

voluntarily commenced in the District of Columbia.  *See*

*Skilstaf, Inc.*, 669 F.3d at 1021 (stating when issue preclusion

applies).  The D.C. Circuit determined that Partington had

received notice and an opportunity to be heard, noting that the

"record [wa]s replete with communications between the JAG and

Partington in which the JAG gave Partington notice it was

pursuing an ethics investigation against him and gave Partington

an opportunity to be heard."  *Partington*, 723 F.3d at 288.  The

court detailed instances in which the Navy communicated to Partington the allegations against him and how and when he could submit material for consideration as part of the investigation. *Id.* at 288-89. The court concluded that Partington had received "ample" due process but had waived his opportunity to be heard. *Id.* at 289. The court went on to say that the Navy's conclusion that Partington had knowingly misrepresented the military trial judge's statements in his Toles appellate brief "was supported by substantial evidence" and that the Navy had articulated a "rational connection between the facts found and the choice made." *Id.* at 291. Accordingly, the court rejected Partington's claim that the Navy had acted arbitrarily and capriciously. *Id.*

Even if collateral estoppel does not apply, Partington presents no new argument or evidence to this court as to why it should depart from the D.C. Circuit's conclusion. In sum, this court's independent review of the record reveals that the Navy afforded Partington substantial due process. The Navy conducted a preliminary inquiry, gave Partington a detailed recitation of his alleged misconduct, investigated the charges, and offered Partington opportunities to respond in writing, as well as an opportunity to respond and participate in an evidentiary hearing before the investigating officer. At the hearing before this court on the Order to Show Cause, this court questioned

Partington as to why he had not attended the military hearing.
Partington said that attending the hearing would have been
futile.  The record shows no such thing.  Instead, the record
establishes that Partington made poor choices during the
military's disciplinary proceedings.  He adopted a cavalier
attitude, even saying, "I have no more interest in your
proceeding and could care less what the outcome is."  ECF No.
26-7 at 247.

Partington's ill-advised choices do not render him a
victim of a due process violation.  Partington must now live
with the consequences of his actions and decisions.

### B.    The Hawaii Supreme Court Did Not Deprive Partington of Due Process.

Partington contends that, apart from any defect in the
underlying military proceedings, the Hawaii Supreme Court
deprived him of due process by failing to provide him with fair
notice that he would be disciplined for something different from
what the military disciplined him for.  ECF No. 5, PageID #s 25-
30.  Noting that the Hawaii Supreme Court ruled that he had
omitted material facts, he says the Hawaii Supreme Court found
"him not guilty with what he was originally charged (deliberate
false statements) and guilty of something with which he was *not*
charged."  ECF No. 5, PageID # 25.

In making this argument, Partington cites *In re Ruffalo*, 390 U.S. 544 (1968). *Ruffalo* holds that disbarment may not be based on conduct not clearly charged in advance. *Id.* at 550-51. The attorney in that case had handled many Federal Employers' Liability Act cases. *Id.* at 546. He was charged with twelve counts of misconduct, some of which were related to having allegedly solicited clients through a railroad employee. *Id.* At the disciplinary hearings before the Ohio Board of Commissioners on Grievances and Discipline, the Board learned that the attorney had not hired the railroad employee to solicit clients at all. *Id.* Instead, the railroad employee was hired to investigate and gather information, including information about the employee's employer. *Id.* An additional professional misconduct charge was then added based on the attorney's hiring of a railroad employee to investigate his own employer. *Id.* By the time this charge was added, the attorney and the railroad employee had already testified during disbarment hearings. *Id.* at 549. The addition of the new charge was based entirely on that testimony. *Id.* at 547, 549.

The attorney was given additional time to respond to the new charge, but the attorney's motion to strike the new charge was denied. *Id.* at 546-47. The attorney was found to have committed seven counts of misconduct, including the one that had been added post-testimony. *Id.* On review, the Ohio

Supreme Court found sufficient evidence to support only the added charge and one other charge. *Id.* The attorney was then suspended indefinitely from the practice of law in Ohio's state courts. *Id.*

Reciprocal discipline proceedings based on the Ohio Supreme Court's suspension order followed in the federal district court and in the Sixth Circuit. *Id.* at 547-48. The Sixth Circuit, relying solely on the Ohio Supreme Court's record and findings, concluded that only the added charge justified the attorney's disbarment before the federal courts. *Id.*

The Supreme Court, reversing the Sixth Circuit, held that the attorney had been deprived of procedural due process given the "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges." *Id.* at 551. The Court said that the attorney had no notice that his employment of the railroad employee "would be considered a disbarment offense until *after* both he and [the employee] had testified at length on all the material facts pertaining to this phase of the case." *Id.* at 550-51. The Court stated that disbarment proceedings "become a trap when, after they are underway, the charges are amended on the basis of the testimony of the accused." *Id.* at 551. At that point, an attorney "can then be given no opportunity to expunge the earlier statements and start afresh." *Id.* The Court observed that the attorney

"may well have been lulled 'into a false sense of security'"
that he could rebut some of the charges by proving that the
hired railroad employee had in fact been an investigator, not a
solicitor of clients, as originally charged. *Id.* at 551 n.4
(internal citation omitted). The Court stated, "[The attorney
had] 'no reason even to suspect' that in doing so he would be,
by his own testimony, irrevocably assuring his disbarment under
charges not yet made." *Id.* (internal citation omitted).

*In re Ruffalo* is inapplicable here. After an
independent review of the record, the Hawaii Supreme Court
determined that Partington had omitted material facts and
suspended him for thirty days. *See Partington*, No. SCAD-11-
0000162, 2011 WL 5517313, at *2 (stating that Partington
"omitted material facts necessary to accurately portray the
court-martial proceedings that were the subject of the appeal").
Although the Navy found no mitigating circumstances and,
instead, considered multiple aggravating factors, *see* ECF No.
26-7 at 66, the Hawaii Supreme Court noted that the record in
the court-martial proceedings was "unclear in some respects" and
that "Partington had some basis on which to argue that his
client could not plead guilty to a lesser included offense under
the circumstances as they existed." *Partington*, No. SCAD-11-
0000162, 2011 WL 5517313, at *2. These mitigating factors led
the Hawaii Supreme Court to conclude that, although Partington

had engaged in professional misconduct by omitting material facts, he had demonstrated that his misconduct warranted only a short period of discipline.  *Id.*

In contrast to the Board in *Ruffalo*, the Hawaii Supreme Court did not compile any new factual record.  The existing record that the court reviewed was restricted to the Navy disciplinary record.  That Navy disciplinary record in itself was also limited, given Partington's decision not to provide any new material to rebut the charges against him or to attend an evidentiary hearing.  The Hawaii Supreme Court thus did not "add" a charge alleging Partington had omitted material facts based on any new evidence, much less any testimony from an evidentiary hearing.  Instead, the Hawaii Supreme Court, having reviewed the existing fixed record, recognized that the record was unclear and confusing and said that it was not convinced that Partington had deliberately made false statements.

The Hawaii Supreme Court could not be said to have "lulled" Partington into "a false sense of security."  Nor does Partington identify any statement that he was induced into making, or any statement that he would not have made had he known in advance that the Hawaii Supreme Court was focusing on his omission of material facts.

Partington claims, "If [he] had testified, he would have had his own testimony used to establish supposed misconduct

for which he had no notice just as the Supreme Court of Hawaii did." ECF No. 5, PageID # 29 n.3. This conclusory statement is seemingly included only to advance Partington's contention that *Ruffalo* bars this court from imposing reciprocal discipline based on the Hawaii Supreme Court's Order of Suspension. *See id.*, PageID #s 51-58. This court does not think this position is entitled to any consideration at all. Partington provides not a hint of what such hypothetically prejudicial testimony might have been. This court notes that the essential difference between a deliberate falsehood and a material omission is that the former requires intent to deceive. A material omission may render a statement false or misleading, but the omission may not have reflected an intent to deceive. This is akin to a lesser-included offense; a deliberate falsehood requires proof of an element not necessary to a material omission. This situation is not analogous to the difference between hiring someone to solicit clients and hiring someone to investigate his own employer.

Partington benefitted from the Hawaii Supreme Court majority's charitable interpretation of the record and its finding of mitigating factors. *See In re Kramer*, 282 F.3d at 727 (noting that in a reciprocal disbarment proceeding, the court focuses on "whether the punishment imposed by another disciplinary authority or court was so ill-fitted to an

attorney's adjudicated misconduct that reciprocal disbarment would result in grave injustice"). This court is similarly giving Partington the benefit of the doubt.

The recently submitted Scott and Mueller declarations attempt to explain what Partington may have intended to convey in his appellate brief. They are consistent with the Hawaii Supreme Court's reading of the record and decision to suspend Partington for only thirty days. But the declarations do highlight how belatedly Partington is endeavoring to clarify the confusing record. Nothing in the record suggests that Partington faced any impediment to a more timely clarification. Luckily for Partington, the Hawaii Supreme Court, even without the recently filed declarations, read the record very sympathetically.

This court concludes that Partington fails to meet his burden of establishing by clear and convincing evidence that the Hawaii Supreme Court either deprived Partington of procedural due process or otherwise acted improperly. This court therefore reciprocally suspends Partington for thirty days.

V. **CONCLUSION.**

Earle A. Partington is suspended from the practice of law before this court for thirty days in accordance with Local Rule 83.4(d). The term of his suspension shall be deemed to

have run during the pendency of this case.  Partington may apply for reinstatement to practice law before this court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 12, 2017.



/s/ J. Michael Seabright
_____
J. Michael Seabright
Chief United States District Judge


/s/ Susan Oki Mollway
_____
Susan Oki Mollway
United States District Judge


/s/ Kevin S.C. Chang
_____
Kevin S.C. Chang
United States Magistrate Judge

*In the Matter of Earle A. Partington*, Civ. No. 11-00753 SOM, Order of Suspension.

48